**Linda MILLER, as Executrix of the Estate of Anna G. Walters, Deceased, Appellant,**

v.

**SACRED HEART HOSPITAL and Mahmood Tahir, M.D. and James F. Cornell, M.D. and Anthony G. Auteri, M.D., and Homayoun A. Hashemi, M.D., and Steven E. Campbell, M.D. and Knud Alexander Haraldsted, M.D., Appellees.**

Superior Court of Pennsylvania.

Submitted March 13, 2000.

Filed May 30, 2000.

Lewis L. Thompson, Allentown, for appellant.

Richard T. Curley, Allentown, for Hashemi, appellee.

George M. Nace, Allentown, for Cornell and Auteri, appellees.

Eugene P. Feeney, Scranton, for Haraldsted, appellee.

Charles W. Craven and Walter F. Kawalec, III, Philadelphia, for Tahir, appellee.

Edward C. McCardle, Allentown, for Sacred Heart Hosp., appellee.

Before JOHNSON, TODD, and HESTER, JJ.

JOHNSON, J.:

¶ 1 Linda Miller, Executrix of the Estate of Anna G. Walters, appeals the trial court's order granting motions for summary judgment filed on behalf of all defendants. Miller asserts that the court erred because it failed to require the defendants to establish the prerequisites for entry of a sanction order prescribed by our decision in *Steinfurth v. LaManna*, 404 Pa.Super. 384, 590 A.2d 1286 (1991). We conclude that *Steinfurth* is inapposite and that the trial court acted properly in awarding summary judgment. Accordingly, we affirm the court's order.

¶ 2 This action arises out of allegations that the defendant physicians and hospital failed to diagnose and treat Miller's decedent for a leaking bile duct following abdominal surgery for the removal of gallstones, causing the decedent's death. The defendants conducted decedent's surgery in June 1995. On June 27, 1997, Miller commenced this action raising allegations of professional negligence against the physicians and corporate negligence against Sacred Heart Hospital (referred to collectively hereafter as "Defendants"). By a scheduling order of October 17, 1997, the trial court directed the parties to complete discovery by October 1, 1998, and submit their expert reports by December 15, 1998. Subsequently, the court amended its scheduling order on two occasions, eventually extending the deadline for submission of expert reports to May 15, 1999. Miller failed to comply with the May 15th deadline and moved for an additional extension of time. The trial court denied Miller's motion. Significantly, the defendants did not seek to compel discovery, and the court never entered any order applying discovery sanctions against Miller.

¶ 3 Thereafter, Defendants filed motions for summary judgment asserting that because Miller had failed to produce an expert report, she could not establish the elements of a claim of professional negligence. Following oral argument, the trial court, the Honorable Lawrence J. Brenner, granted summary judgment in favor of Defendants. The court entered the order pursuant to Pa.R.C.P. 1035.2, relying solely upon Miller's failure to establish a prima facie case of negligence. Trial Court Order, 8/2/99, at 2 n. 1. *See also* Pa.R.C.P. 1035.2(2) (providing for entry of summary judgment if an "adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action"). Miller filed this appeal.

¶ 4 Miller raises the following issue for our review:

Did the Honorable Court below err in sustaining the summary judgment motions of the Appellees, based upon the absence of an expert medical report supporting the Appellant when the appellees did not demonstrate that the Plaintiff acted in bad faith, that the appellees had suffered some specific prejudice because of the delayed expert report which could not be cured prior to trial, that there had been repeated failures to produce the report for a considerable period of time, and that the summary judgment was justified in light of the discovery deficiency?

Brief for Appellant at 3.

¶ 5 Our scope of review of an order granting summary judgment is plenary. *See Swartley v. Hoffner*, 734 A.2d 915, 918 (Pa.Super.1999), *appeal denied,*

747 A.2d 902, 1999 WL 1146766 (Pa. Dec.9, 1999). Accordingly, we apply the same standard as the trial court, reviewing all of the evidence of record to determine whether there exists a genuine issue of material fact. *See id.* In the absence of a factual dispute, we must discern whether the moving party is entitled to judgment as a matter of law. *See id.* We may overturn a trial court's entry of summary judgment only if the court has committed a clear abuse of discretion. *See Eaddy v. Hamaty*, 694 A.2d 639, 643 (Pa.Super.1997). "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." *Id.* (quoting *In re Rose Hill Cemetery Ass'n*, 527 Pa. 211, 590 A.2d 1, 3 (1991)). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. *See id.* "Similarly, the trial court abuses its discretion if it does not follow legal procedure." *Id.*

¶ 6 In this case, Miller argues that the proper procedure for disposition of Defendants' motions for summary judgment is prescribed by our decision in *Steinfurth*, 404 Pa.Super. 384, 590 A.2d 1286, and that the court erred in not applying the multi-factor analysis that *Steinfurth* enunciates. Brief for Appellant at 9. Upon review of the record, we conclude that *Steinfurth* is wholly inapposite.

¶ 7 In *Steinfurth*, we reviewed a trial court's dismissal of the plaintiffs' action for their violation of the discovery rules. The plaintiffs had failed, first, to identify their expert witness in response to interrogatories in violation of Pa.R.C.P. 4005 (WRITTEN INTERROGATORIES TO A PARTY), and later, to produce the expert's report within sixty days pursuant to a court-approved stipulation. *See Steinfurth*, 590 A.2d at 1288. The defendants filed motions for sanctions. Ultimately, the plaintiffs produced the report prior to trial in sufficient time to allow the defendants to review and counter the report,

but the trial court, nonetheless, dismissed their action. Although the court styled the order as one entering summary judgment, we recognized that the court had acted in response to the plaintiffs' earlier violation of the discovery rules and the defendants' motions for sanctions. *See id.* Consequently, we reviewed the matter as a sanctions case and restated a multi-factor test to be applied by trial courts prior to imposing sanctions. We focused our inquiry to ensure that the effect of the sanction was not disproportionate in view of the gravity of the underlying discovery violation. *See id.* ("However, when a discovery sanction is imposed, the sanction must be appropriate when compared to the violation of the discovery rules."). We stated the test as follows:

> We first examine the party's failure in light of the prejudice caused to the opposing party and whether the prejudice can be cured. A second factor to be examined in reviewing a sanction is the defaulting party's willfulness or bad faith in failing to comply with the discovery order, i.e., the merits of their excuse. Third, we consider the number of discovery violations. Repeated discovery abuses are disapproved. Finally, as noted above, the importance of the precluded evidence in light of the failure must be considered.

*Id.* at 1288–89 (internal citations omitted). The factors we included in the test reveal our concern only with the pattern and effect of the defaulting party's conduct in violating discovery, and have no direct relevance to the elements of the plaintiff's cause of action.

■ ¶ 8 We conclude, accordingly, that our decision in *Steinfurth* prescribes the proper inquiry for application of discovery sanctions under Rule 4019 (SANCTIONS), not summary judgment under Rule 1035.2 or its predecessor Rule 1035. Nowhere does our opinion in *Steinfurth* purport to interpret Rule 1035.2 or to govern any aspect of its application. Though we ultimately reversed the trial court's order, we

did so because the plaintiffs' violation of the discovery rules was not sufficiently severe to deserve the ultimate sanction of dismissal under Rule 4019(a). Significantly, we did not address whether the plaintiffs had demonstrated a prima facie case under Rule 1035.2. Thus, our decision in *Steinfurth* governs application of a different remedy than is at issue in the case before us, in response to a different motion, at a different procedural stage of the action.

¶ 9 The manner in which this case is distinct from *Steinfurth* is critical to our analysis, as it was fundamental to the trial court's disposition of Defendants' motions for summary judgment. Simply stated, *Steinfurth* is a sanctions case, not a summary judgment case. Because the court's order in this case was entered not as a sanction for a procedural violation, but rather, to address a substantive deficiency of proof in Miller's cause of action, the order is properly subject to review only under Rule 1035.2 and cases interpreting it.

¶ 10 Rule 1035.2 provides as follows:

**Rule 1035.2. MOTION**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. "The purpose of [Rule 1035.2] is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed." *Eaddy v. Hamaty*, 694 A.2d 639, 643 (Pa.Super.1997). We have recognized, accordingly, that summary judgment is appropriate where a party fails to produce evidence of facts essential to his cause of action. *See id.* at 641–42. In the context of actions for medical malpractice, the plaintiff's evidence must establish that:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm.

*Id.* at 642. Our courts have held that because "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson," a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1285 (1978). *See also Brannan v. Lankenau Hosp.*, 490 Pa. 588, 417 A.2d 196, 199 (1980). Thus if, at the conclusion of discovery, the plaintiff fails to produce expert medical opinion addressing the elements of his cause of action within a reasonable degree of medical certainty, he has failed to establish a prima facie case and may not proceed to trial. *See Eaddy*, 694 A.2d at 643. At this juncture, a moving party is entitled to summary judgment under Rule 1035.2. *See id.* In the absence of competent evidence of medical opinion, the plaintiff may avoid summary judgment only if "the matter . . . is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons." *Brannan*, 417 A.2d at 201 (concluding that expert testimony was not

necessary to establish negligence of hospital staff members who failed to comply with supervising physician's written orders and to notify physician of patient's deteriorating condition).

¶ 11 Upon review of the record, we note that even as of the date on which Miller filed the Brief for Appellant, she had not obtained an expert opinion or filed an expert report. Moreover, the medical history and condition of Miller's decedent following her surgery, as well as Miller's allegations concerning the cause of death, are fraught with medical complexity. In a highly technical recitation of the facts, Miller asserts that her decedent died as a result of the failure of surgical clips on the decedent's cystic bile duct to stop the flow of bile into her body cavity. Brief for Appellant at 6. As a result of the consequent leakage of bile, the decedent developed bile peritonitis and suffered a "multisystem organ failure." *Id.* at 6. Miller argues that "Appellees are negligent in failing to insure the clips totally occluded the cystic duct and/or attached to insure they would not slip." Clearly, evaluation of these circumstances and the extent to which the defendants were negligent in affixing surgical clips to the decedent's bile duct requires detailed professional knowledge of the medical and surgical techniques employed by the defendants. Such matters are well beyond the range of experience of the laypersons to be empaneled on a jury and are not readily subject to comprehension by anyone who is not medically trained, absent expert guidance.

¶ 12 Accordingly, we conclude that in failing to produce an expert opinion to substantiate the elements of her claim, Miller failed to demonstrate a prima facie case of medical negligence. In accordance with the purpose and provisions of Rule 1035.2, the Defendants were entitled to summary judgment. Consequently, the trial court's entry of summary judgment was correct and appropriate. *See Eaddy*, 694 A.2d at 643 ("The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed.").

¶ 13 For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of all defendants.

¶ 14 Order **AFFIRMED**.