**[J-64-2013] [MO: Stevens, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 23 EAP 2013 |
| | : |
| Appellee | : Appeal from the Judgment of the Superior |
| | : Court entered September 11, 2012 at No. |
| | : 1336 EDA 2010, affirming the Judgment of |
| v. | : Sentence entered April 16, 2010 in the |
| | : Court of Common Pleas of Philadelphia |
| | : County, Criminal Division, at Nos. CP-51- |
| HAROLD WINSTON NOEL, JR., | : CR-0011510-2008; CP-51-CR-0011511- |
| | : 2008; and MC-51-CR-0033142-2008. |
| Appellant | : |
| | : ARGUED: September 11, 2013 |

## CONCURRING OPINION

**MR. JUSTICE BAER**                    **DECIDED: November 21, 2014**

There are several touchstones within American criminal jurisprudence with which every citizen can identify: the right to remain silent; the right to effective counsel; and the right to trial by a fair and impartial jury. Constitutions have formed these hallmarks, statutes and judicial decisions have defined them, and procedural rules have sharpened them. Inextricably encompassed within the right to trial by a fair and impartial jury is the process by which the jurors are selected; and, in Pennsylvania, that process is regulated by Pa.R.Crim.P. 631 - 635. Specifically, subsections (E)(1) and (E)(2) of Rule 631 provide for two different methods of *voir dire*: the "individual *voir dire* and challenge system," and the "list system of challenges," respectively. In non-capital cases such as the one presented instantly, the trial judge shall select the method to be utilized. In this case, the trial court chose the subsection (E)(2) "list system."

When the list system is chosen, a battery of potential jurors shall be compiled, the number of which shall be no less than twelve, plus the number of alternatives the trial court has determined should be selected, plus the total number of peremptory challenges for the Commonwealth and defendant combined. See Pa.R.Crim.P. 631(E)(2)(a). Initially, no peremptory challenges are permitted. Rather, upon the receipt of the juror questionnaires and examination of the prospective jurors, only "for cause challenges" may be made by either side. See id. 631(E)(2)(b)-(c). If the granting of for cause challenges brings the total number of potential jurors below the aforementioned minimum threshold, then more prospective jurors "shall be added to the list," and they shall be scrutinized in the same manner as those originally on the list. See id. 631(E)(2)(d)-(e). Of most importance to this appeal, only once all prospective jurors have been examined, and all for cause challenges have been made, may peremptory challenges be exercised by "passing the list" of the remaining prospective jurors alternatively between the parties. See id. 631(E)(2)(f). Upon the exhaustion of all peremptory challenges, those left in the pool are seated as the principal and alternate jurors.[1] See id.

Instantly, Harold Winston Noel, Jr. (Appellant) was to be tried for his alleged role in two armed robberies. The trial court determined that the jury would be composed of twelve principal jurors and two alternates, and as noted above, selected the list system as the mode of jury selection. In accord with Rules 633 and 634(A)(2), each party was

---

[1] The list system is contrary to the individual *voir dire* method, where both for cause and peremptory challenges are exercised immediately following examination of each individual prospective juror. See Pa.R.Crim.P. 631(E)(1)(a)-(b). Accordingly, and unlike the list system, the parties do not know which jurors will be dismissed for cause before utilizing peremptory strikes. Accord id. The individual *voir dire* method is usually employed in the most serious of cases, and is mandatory in capital homicide trials, in which the parties are given twenty peremptory strikes instead of seven. See id. 634(A)(3).

given seven peremptory challenges for principal jurors, and one additional peremptory challenge for alternate jurors. The parties were then given an initial list of forty-one potential jurors, and the court and counsel began the task of questioning them.

Dismissals for hardship and for cause challenges quickly brought the number of potential jurors down to twenty-three, well below the minimum threshold described in Rule 631(E)(2)(a), which for this case was thirty.[2] According to the plain language of Rule 631(E)(2)(d), upon recognizing that the minimum threshold had been exceeded, the trial court should have ceased *voir dire*, obtained new, prospective jurors to add to the list, and then resumed the list system process by subjecting the newly added prospective jurors to questioning and dismissal for cause.

Apparently, however, new, prospective jurors were not available to the court until a "fresh panel" was brought into the Philadelphia Criminal Justice Center the following day. Given this pragmatic difficulty, and despite the clear, explicit, and unambiguous direction of Rule 631(E)(2)(d), the trial court forced counsel for both sides to use peremptory challenges on the twenty-three jurors currently on the prospective list, without any knowledge or information as to what the make-up of the "fresh panel" would be the next day. Based on this procedure, any juror not stricken by the end of the first day would be seated on the jury. Appellant's counsel objected, but the court overruled the objection. Appellant's counsel then exercised all seven of his peremptory challenges, while the prosecuting attorney saved one for the next day's "fresh panel." Given the thirteen peremptory strikes, the list of twenty-three potential jurors was reduced to ten, who all became principal jurors.

---

[2] The minimum threshold for thirty is computed as follows: the selection of twelve principal and two alternate jurors; the dismissal of fourteen prospective principal jurors via peremptory strike; and the dismissal of two prospective alternate jurors via peremptory strike.

The following day, upon the presentation of the "fresh panel," Appellant's counsel renewed his objection to the procedure, which the court again overruled. The parties then started examining the new, prospective jurors in the manner provided by Rule 631(E)(2)(b)-(c). After the first six were interviewed, the trial court stopped the process because, absent a strike for cause being granted, four of these first six would fill the remaining slots on the jury. After the court indicated that it would not *sua sponte* strike any of the six for cause, Appellant's counsel moved for the court to strike prospective Juror No. 2 for cause, as she had indicated during questioning that her sister was a police officer, and was equivocal in her answers as to whether she could therefore evaluate a police officer's testimony without any untoward bias. The court denied the motion.

Upon that denial, Appellant's counsel requested the trial court to grant him an additional peremptory strike, reasoning: "had I had the opportunity to evaluate the pool, [Juror No. 2] would have been a juror that I would have stricken." Notes of Testimony, Feb. 9, 2010 at 60. Counsel further observed that he was forced to use his final peremptory strike during the previous day's selection on a prospective juror who had twice been the victim of armed robberies, after the trial court had denied a strike for cause for the same juror. Counsel therefore averred that, absent the trial court granting him an eighth peremptory strike, Appellant would be denied his constitutional right to an impartial jury. The prosecuting attorney responded that he would have liked to have stricken a juror during the previous day's proceedings, but strategically kept his seventh peremptory challenge for day two, and that it was not his fault that Appellant's counsel did not do the same. The trial court agreed and denied Appellant counsel's motion. Appellant would later be convicted of the majority of the charges against him, and this appeal followed.

A majority of the Superior Court affirmed the judgment of sentence. The panel first opined that, when the trial court forced the parties into using any peremptory challenges it wished at the conclusion of day one (and thus before all members of the *venire* were chosen) in evident violation of Rule 631(E)(2), such a violation was not *per se* prejudicial because it essentially mirrored the individual *voir dire* process contemplated by Rule 631(E)(1), and nothing prohibited the trial court from selecting the jury in such a hybrid fashion. See Commonwealth v. Noel, 53 A.3d 848, 857 (Pa. Super. 2012). The panel then continued that no actual prejudice to Appellant was apparent because Appellant did not contend that the jury, as seated, was not impartial or unqualified, nor did he allege any other form of substantive prejudice. See id.

Judge David N. Wecht dissented, initially agreeing with the majority that the trial court erred in its application of Rule 631, and further that the hybrid approach used by the trial court was not *per se* prejudicial. The dissent disagreed, however, with not granting Appellant a new trial, opining that "prejudice necessarily inheres where such errors may have compelled a defendant to exhaust his peremptory challenges differently than he would have done absent the error." Id. at 860 (Wecht, J., dissenting). The dissent noted that while the improper loss of a peremptory challenge does not automatically implicate the federal constitution's right to an impartial jury, "they are a means to achieve the end of an impartial jury." Id. at 861 (Wecht, J., dissenting) (quoting Ross v. Oklahoma, 487 U.S. 81, 88 (1988)). The dissent contended, however, that a showing of actual prejudice is also not necessary; indeed, it is quite often impossible. Rather, the dissent concluded that reversible error should be found if the decision of the trial court denied the defendant "the opportunity to use the prescribed number of peremptory challenges in the way intended by the rule." Id. at 866 (Wecht, J., dissenting). Here, in the dissent's view, that denial took the form of the trial court

essentially forcing Appellant to exhaust his challenges on the first day, before the entire pool of potential jurors was subject to questioning and for cause challenges.

While the Majority Opinion herein does not completely accept that error occurred, for my part, I agree with the Superior Court dissent that the trial court clearly and palpably violated and misapplied Rule 631.[3] As noted, the court chose to utilize the Rule 631(E)(2) list selection procedure for this case. When the trial court did not want to make the twenty-three jurors remaining in the selection pool come back for a second day of jury selection, it presented Appellant and the Commonwealth with a Hobson's choice: either use your peremptory challenges now, or wait for tomorrow; but, failure to use the peremptory challenges will result in anyone left at the end of the day being placed on the jury.

More to the point, nothing in Rule 631 authorizes a trial court to switch back and forth between the jury selection methods or to create a hybrid of the two simply because the day has run late or the jury assembly room is empty. Importantly, no decision from this Court, the ultimate arbiter and interpreter of the Rules of Criminal Procedure, countenances the unconventional scheme undertaken by the trial court here.[4] To be

---

[3] Tangentially, I note that the Majority, in relating that the appropriate standard of review in this case is an evaluation of whether the trial court committed an abuse of discretion, seems to overlook that discretion is abused not just when a court acts with biased or partial judgment, but further when it fails to conform with, overrides, or misapplies the prevailing law based upon the facts of a given case. See Lineberger v. Wyeth, 894 A.2d 141, 146 (Pa. Super. 2006) (quoting Miller v. Sacred Heart Hosp., 753 A.2d 829, 832 (Pa. Super. 2000)). Accordingly, the trial court's misapplication of Rule 631, as described infra, certainly qualifies as an abuse of discretion.

[4] Indeed, the Majority resorts to two inapposite Superior Court cases for the conclusion that an abuse of discretion does not lie if a trial court decides to implement or employ a hybrid method of jury selection. See Maj. Slip Op. at 21-22. The first of these, Commonwealth v. Berrigan, 535 A.2d 91, 96-97 (Pa. Super. 1987), misinterprets language from an earlier Superior Court decision (Commonwealth v. Pittman, 466 A.2d 1370, 1373-74 (Pa. Super. 1983)) as authorizing hybrid jury selection. However, (continued…)

sure, if the Majority Opinion in this appeal is read as this Court's licensing of trial courts to conduct jury selection in a manner similar to that completed here, then the dichotomy and procedures established by Rule 631 will be of little import in the future.

With that said, however, I ultimately find myself in a concurring posture in this appeal because Appellant has failed to preserve for appellate review the discrete issue of whether he suffered any actual prejudice under the specific circumstances of this case. As recounted by both the Majority herein and the Superior Court dissent, courts have noted that the improper loss of a peremptory challenge does not rise to the level of a *per se* violation of one's constitutional right to a fair and impartial jury. That general rule notwithstanding, if a defendant can show that he was tried before an improperly constituted jury due to a trial court wrongfully forcing a defendant into using a peremptory challenge, then a new trial may be warranted. The archetypal example of what is deemed to be "actual prejudice" occurs when a defendant is forced "to use his peremptory challenges on a person who should have been excused for cause and the defendant exhausts those peremptory challenges prior to the seating of the jury." Commonwealth v. Ingber, 531 A.2d 1101, 1104 (Pa. 1987) (quoting Commonwealth v. Jones, 383 A.2d 874, 876 (Pa. 1978)).

---

(…continued)
Pittman actually noted that hybrid methods of *voir dire* are not contemplated by the Rules of Criminal Procedure. Pittman, 466 A.2d at 1374. The other decision, Commonwealth v. Williams, No. 560 WDA 2001 (Pa. Super. 2003) (unpublished memorandum) is unpublished, not precedential, and not properly cited in a judicial opinion, pursuant to the Superior Court's Internal Operating Procedure § 65.37(A) ("An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.").

The Majority rejects the argument that the instant appeal is akin to Ingber or Jones, and concludes that any error in this case associated with the hybrid application of Rule 631 was harmless.  I disagree.  Had the trial court followed the clear and unambiguous mandates of Rule 631(E)(2)(d) when the available jury pool fell below the thirty jurors minimally required for selection of a full jury, see supra note 2, the following should have happened: court should have adjourned for the day, the "fresh panel" should have been added to the prospective pool, and, when the parties returned the next morning, Appellant's counsel should have been given the opportunity to question Juror No. 2 concerning her potential biases regarding police officers and moved to strike her for cause.  When the trial court denied that motion, counsel could then have made the strategic decision to strike Juror No. 2 or some other prospective juror via peremptory challenge when the list was passed for the exercising of those challenges.  Then, had Appellant used a peremptory challenge on Juror No. 2, Appellant may have had a meritorious issue for appeal pursuant to Ingber, if an appellate court determined that the trial court erred in not striking Juror No. 2 for cause.

Of course, what happened instead was Appellant used all of his peremptory challenges on day one of jury selection due to the erroneous Rule 631 procedure implemented by the trial court, and that directly triggered Juror No. 2 being placed on the jury.  While this fact pattern is not quite on all fours with Ingber, the resulting prejudice seems to be the same, and this would have been an appropriate case for appellate disposition if Appellant had argued to the appellate courts that the trial court's failure to strike Juror No. 2 for cause was error, and therefore that he was actually prejudiced when Juror No. 2 was placed on the *venire*.

Unfortunately, however, Appellant did not pursue this line of reasoning, and instead his arguments echo the Superior Court dissent's logic that prejudice exists here

solely because the trial court's hybridization of Rule 631 "forced Appellant to assess an incomplete jury pool for purposes of applying his peremptory challenges without full information about the jury pool as it would composed." Noel, 53 A.3d at 866 (Wecht, J., dissenting). Appellant and the dissent expound that relief should therefore be granted upon "the mere possibility that the defendant had been cheated of one peremptory challenge." Id. at 865 (Wecht, J., dissenting) (emphasis in original).

Respectfully, the "mere possibility" of prejudice is antithetical to the prevailing standard defined by federal and Pennsylvania jurisprudence: actual prejudice. Instantly, the prospect of actual prejudice exists and, again, would have been a worthy question to review. However, Appellant has waived any challenge to the prejudice associated with Juror No. 2 sitting in judgment of him by failing to raise such an argument in his statement of matters complained of on appeal pursuant to Pa.R.A.P 1925(b), see Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."); or in his briefs to the Superior Court and this Court. See Wirth v. Commonwealth, 95 A.3d 822, 837 (Pa. 2014) ("Where an appellate brief fails to…develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him.") (internal quotations omitted); see also Pa.R.A.P. 2119(a) (providing that appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent"). Accordingly, while I disagree with much of the Majority Opinion, I am constrained to concur in the result.[5]

---

[5] Unlike this author, Mr. Justice Saylor, in dissent, would find Appellant entitled to relief given the Commonwealth's failure to assert an argument that any error resulting from the trial court's violation of the rules was not prejudicial and was, therefore, harmless error. Respectfully, as noted herein, I do not conclude, as does the majority, that the violation of the rules by the trial court here was harmless error. Nevertheless, in this regard I note that we have previously indicated that this Court may affirm a lower (continued…)

---

(…continued)

court based upon harmless error even if such an argument is not raised by the parties. See Commonwealth v. Allshouse, 36 A.3d 163, 182 (Pa. 2012). Rather, I reject the idea that a violation of the rules is *per se* prejudicial and that absent a showing of actual prejudice, as was established by the Appellants in Jones and Ingber, relief in the form of a new trial is not warranted.