J-S28039-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| RONALD RUSSELL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| WESTMORELAND COUNTY | : | |
| CARDIOLOGY; JAMES E. ADISEY, M.D.; | : | |
| AND EXCELA HEALTH WESTMORELAND | : | |
| HOSPITAL A/K/A WESTMORELAND | : | |
| REGIONAL HOSPITAL EXCELA HEALTH, | : | |
| | : | |
| Appellees | : | No. 1696 WDA 2016 |

Appeal from the Order October 13, 2016
in the Court of Common Pleas of Westmoreland County,
Civil Division, at No(s): 5133 of 2012

BEFORE:    OLSON, MOULTON, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED JULY 12, 2017**

Ronald Russell appeals *pro se* from the October 13, 2016 order which granted summary judgment in favor of Westmoreland County Cardiology and James E. Adisey, M.D. (Defendants, collectively)[1] in this medical malpractice case.  We affirm.

Russell made the following allegations in his complaint.  Russell was admitted to Westmoreland Hospital in September 2010 with shortness of breath and leg swelling.  His attending physician was Dr. Adisey of

---

[1] Russell settled his claims against defendant Excela Health Westmoreland Hospital a/k/a Westmoreland Regional Hospital Excela Health in June 2014. Response to Rule to Show Cause, 12/5/2016.  The October 13, 2016 order thus disposes of all remaining claims and parties and is final and appealable pursuant to Pa.R.A.P. 341(b)(1).

*Retired Senior Judge assigned to the Superior Court.

Westmoreland County Cardiology. Complaint, 4/8/2013, at ¶¶ 7-8. With a pulmonary embolism suspected, he was placed on blood thinners, including heparin and warfarin, and ordered to undergo daily blood-clotting tests. *Id.* at ¶¶ 10-11. When he was discharged from the hospital on September 25, 2010, Russell was instructed to continue taking the blood thinners. *Id.* at ¶ 15. However, he was not advised to undergo regular blood testing although his medical records specified such testing.[2] *Id.* at ¶¶ 13-16. In mid-October 2010, Russell suffered subarachnoid hemorrhage and partial seizure. He was admitted to UPMC Presbyterian Hospital, was found to have elevated warfarin levels, and was ultimately discharged with instructions not to take any additional warfarin. *Id.* at ¶¶ 23-24.

On August 21, 2012, Russell, then represented by counsel, initiated the instant action by filing a praecipe for a writ of summons. On April 8, 2013, Russell filed a complaint alleging that Defendants' treatment "deviated from the standard of care recognized by a reasonable segment of the medical community" in failing to advise him of the need for post-discharge blood testing to monitor warfarin levels. *Id.* at ¶¶ 6, 26.

The parties engaged in discovery; Russell mediated and settled his claims with Westmoreland Hospital; and, on April 1, 2015, the trial court

---

[2] It appears that Steven F. Wodzinski, M.D., was the physician who wrote the prescription and discharge instructions that were not communicated to Russell. *See*, *e.g.*, Trial Court Opinion, 10/13/2016, at 4 (pages unnumbered).

granted Russell's counsel permission to withdraw and Russell permission to proceed *pro se*. Order, 4/1/2015. In November 2015, Defendants filed a motion to compel production of expert reports, which resulted in an order directing Russell to produce expert reports by January 15, 2016. In response, Russell produced a report from Andrew Doorey, M.D. Dr. Doorey's half-page report indicated that he reviewed Russell's medical records and was of the opinion that the failure of the discharge instructions to "mention warfarin or the careful monitoring required" constituted "a gross deviation from the standard of care" which "led to the subsequent bleeding and neurological damage sustained by" Russell in October 2010.[3] Brief in Opposition to Motion Summary Judgment, 9/21/2016, at Exhibit 3.

Defendants moved for summary judgment, contending that Dr. Doorey's report was insufficient to establish that Defendants had breached any duty of care owed to Russell. Motion for Summary Judgment, 5/30/2016, at 9. The trial court denied the motion as premature because there was outstanding discovery, but instituted a case management order setting deadlines for the completion of discovery and the production of expert reports. Order, 4/18/2016.

On August 17, 2016, Defendants filed a renewed motion for summary judgment, noting therein that Russell had failed to come forward with any

---

[3] It is not clear from the record before us, but it appears that Dr. Doorey's "report" may have been the written statement obtained at the outset of the case to support the certificate of merit requirements of Pa.R.C.P. 1042.3.

new expert report within the time allotted. Renewed Motion for Summary Judgment, 8/17/2016, at 5. Accordingly, Defendants reasserted their right to judgment as a matter of law based upon the deficiencies in Dr. Doorey's report. *Id.* at 9-10. Russell filed a response indicating that Dr. Doorey's report was sufficient to survive summary judgment, and that, in any event, Defendants' negligence was obvious to a layperson such that no expert testimony was necessary. Brief in Opposition to Motion Summary Judgment, 9/21/2016, at 11-12.

The trial court granted Defendants' motion by order of October 13, 2016.[4] Russell timely filed a notice of appeal, and both Russell and the trial court complied with Pa.R.A.P. 1925. Russell presents this Court with five questions that can be reduced to the following issues: (1) whether expert testimony is necessary in this case to prove negligence, and (2) whether Dr. Doorey's report offered sufficient expert opinions to survive summary judgment. Russell's Brief at 4-5.

We begin our review with the applicable legal principles.

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact

---

[4] The order is dated October 12, 2016, but was not filed until October 13, 2016.

against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt.

An order granting summary judgment will be reversed if the trial court committed an error of law or abused its discretion. The decision relating to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. It is settled that, [i]f there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Malanchuk v. Sivchuk***, 148 A.3d 860, 865-66 (Pa. Super. 2016) (*en banc*)

(internal citations and quotation marks omitted).

Medical malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act. Because medical malpractice is a form of negligence, to state a *prima facie* cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm. With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation.

A narrow exception to the requirement that medical malpractice claims be supported by expert testimony applies in instances of obvious negligence, *i.e.*, circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert. In such instances, the doctrine of *res ipsa loquitur* allows a fact-finder to infer from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant. The doctrine applies under the following circumstances:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

**Fessenden v. Robert Packer Hosp.**, 97 A.3d 1225, 1229-30 (Pa. Super. 2014) (internal citations omitted).

"[T]he need for expert testimony in a medical malpractice claim will rest upon the facts and averments of the individual case." **Ditch v. Waynesboro Hosp.**, 917 A.2d 317, 323 (Pa. Super. 2007), *aff'd*, 17 A.3d 310 (Pa. 2011). When the facts of the case require expert testimony, the expert's opinion must be stated within a reasonable degree of medical certainty. **See**, **e.g.**, **Eaddy v. Hamaty**, 694 A.2d 639, 642 (Pa. Super. 1997). "[I]f, at the conclusion of discovery, the plaintiff fails to produce expert medical opinion addressing the elements of his cause of action within a reasonable degree of medical certainty, he has failed to establish a *prima facie* case and may not proceed to trial." **Miller v. Sacred Heart Hosp.**, 753 A.2d 829, 833 (Pa. Super. 2000).

Russell contends that a jury could conclude without expert testimony that it was negligent for Dr. Adisey not to inform him that Dr. Wodzinski had prescribed outpatient blood testing. Russell's Brief at 17. The trial court

disagreed, ruling that this "is not a situation of obvious negligence." Trial Court Opinion, 10/13/2016, at 4 (unnumbered).

> A lay person would not know whether it is the responsibility of the attending physician, the treating physician, the nurse, or anyone else in a hospital setting to supply [the] patient with the proper discharge instructions. This is especially the case when another physician, Dr. Wodzinski, is the one [who] wrote the prescription and discharge instructions. Therefore, [Russell] does not fall within the exception permitting a medical malpractice case to proceed without a sufficient expert report.

*Id.*

We agree with the trial court. Whether Russell should have undergone outpatient blood testing is not something a layperson knows as well as any expert. Russell suggests that because Dr. Wodzinski prescribed outpatient testing, it follows that Dr. Adisey was negligent in failing to inform Russell of Dr. Wodzinski's order. That is only true if it is established that the ordering of outpatient blood testing was required to satisfy the standard of care. Without such testimony, an ordinary layperson would have no idea whether Dr. Wodzinski or Dr. Adisey acted reasonably under the circumstances.

Russell's allegations are that Defendants' failure to inform him that he needed to have testing done after being discharged from the hospital to monitor the warfarin levels in his blood "deviated from the standard of care recognized by a reasonable segment of the medical community." Complaint, 4/8/2013, at ¶¶ 6, 26. It is beyond cavil that Russell must produce

someone with specialized medical knowledge to prove what a reasonable segment of the medical community recognizes as appropriate treatment.

Accordingly, we agree with the trial court that Russell cannot make out a *prima facie* case without expert testimony. ***See Vazquez v. CHS Prof'l Practice, P.C.***, 39 A.3d 395, 400 (Pa. Super. 2012) (holding expert testimony was necessary to establish that broken piece of catheter left inside patient, requiring second surgery, was the result of negligence, as it was not obvious that catheters do not break in the absence of negligence); ***Ditch***, 917 A.2d at 324 (rejecting argument that ordinary rather than professional negligence was alleged in case in which a stroke patient fell from her hospital bed while being transported from the emergency department to a hospital room, holding instead that expert testimony was necessary "to determine the proper manner in moving stroke patients, whether they have a propensity of falling down, whether they should be restrained, and whether they can be left unattended during the move"); ***Miller***, 753 A.2d at 834 (holding negligence was not obvious where it was alleged that the decedent was injured by bile leakage as a result of defendants' failure to affix properly surgical clips to block the bile duct; "Clearly, evaluation of these circumstances and the extent to which the defendants were negligent in affixing surgical clips to the decedent's bile duct requires detailed professional knowledge of the medical and surgical techniques employed by the defendants.").

With his remaining issues, Russell contends that the record contains sufficient expert testimony to survive summary judgment. Specifically, Russell points to the expert report of Dr. Doorey and the deposition testimony of Dr. Wodzinski. Russell's Brief at 10, 14.

The entire substance of Dr. Doorey's report is as follows.

I have reviewed the records of Ronald Russell's care that he received from Westmoreland County Cardiology, Dr. James Adisey & Excela Hospital.

Ronald Russell was admitted for presumed pulmonary embolism and begun on and discharged on warfarin.

Instruction for taking warfarin and subsequent monitoring were listed on a sheet of paper that was not given to the patient on discharge. The discharge sheets actually given to him do not mention warfarin or the careful monitoring required: this is a gross deviation from the standard of care. This deviation led to the subsequent bleeding and neurological damage sustained by Ronald Russell.

Brief in Opposition to Motion Summary Judgment, 9/21/2016, at Exhibit 3.

As the trial court aptly noted,

Dr. Doorey's report makes a general statement that a failure to provide [Russell] with instructions regarding the prescription and the monitoring required when taking said prescription is a gross deviation from the standard of care. However, the report fails to apply that standard of care specifically to [Dr.] Adisey and Westmoreland County Cardiology. The report does not provide an answer to the question of whether an attending physician has the responsibility, and therefore the duty, to provide written instructions to the patient upon discharge. Dr. Doorey does not provide any explanation of the existing standard of care and how the Defendants in this case were responsible for ensuring that the standard of care was fulfilled. The report also fails to indicate that the generalized statement made regarding gross

deviation from the standard of care is stated within a reasonable degree of medical certainty.

Trial Court Opinion, 10/13/2016, at 3-4 (unnumbered). Thus, Dr. Doorey's report is not sufficient to establish the standard of care recognized by a reasonable segment of the medical community that Defendants are alleged to have violated.

Russell suggests that the testimony of Dr. Wodzinski, the physician who had prescribed the blood tests, supplies the necessary evidence. Russell's Brief at 10. Dr. Wodzinski did not provide a report for Russell's use in this litigation; moreover, he was deposed by Defendants in this case as a fact witness only. *See* N.T., 2/12/2015, at 41 (counsel for Dr. Wodzinski indicating that he was there "as a treating physician[] in his care and treatment of the patient"). His counsel expressly advised that Dr. Wodzinski would not answer any questions calling for expert testimony. *Id.* at 52-53. Russell does not point to any place in Dr. Wodzinski's deposition where he testified that Defendants deviated from the standard of care, and we found no such statement in our review of the record. Accordingly, Dr. Wodzinski's deposition testimony does not provide expert testimony to establish the relevant standard of care or Defendants' failure to meet it.

Russell has failed to come forth with expert testimony, expressed within a reasonable degree of medical certainty, to establish precisely what duties either or both of Defendants owed to Russell, or that their breach of a

duty was the proximate cause of the harm suffered by Russell. Therefore, the trial court did not err in granting Defendants' motion for summary judgment. *See*, *e.g.*, *Miller*, 753 A.2d at 833 (providing summary judgment is appropriate when a plaintiff fails to establish an element of the cause of action).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/2017