J-A22032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LOLA DRILLING II, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICE DRILLING B, LLC, AND | : | No. 880 WDA 2023 |
| LIGHTNING CREEK HOLDINGS, LP | : | |

Appeal from the Order Entered July 6, 2023
In the Court of Common Pleas of Greene County Civil Division at No(s):
A.D. 1067 of 2017

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: FEBRUARY 25, 2025**

Appellant, LOLA Drilling II, LLC, appeals from the order entered in the Greene County Court of Common Pleas, which granted summary judgment in favor of Appellee, Rice Drilling B, LLC, and against Appellant.  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 7, 2011, Billie L. Gorby (lessor) and Dale Property Services Penn, L.P. (lessee) executed a lease ("Gorby Lease"), conveying a 60% interest in certain oil and gas rights to a property in Greene County ("Leasehold").[1]  The Gorby Lease set forth a 5-year primary term, which expired on March 6, 2016.  The Gorby Lease further stated that the lease shall continue into its secondary term

---

[1] Appellee, successor in interest to Dale Property Services Penn, L.P., currently holds the lessee interest in the Gorby Lease.

if any of the following actions are satisfied: (i) operations are conducted on the Leasehold or lands pooled therewith in search of oil, gas, or their constituents, or (ii) a well deemed by Lessee to be capable if production is located on the Leasehold or lands pooled or unitized therewith, or (iii) oil or gas, or their constituents, are produced from the Leasehold or lands pooled therewith … or (v) if prescribed payments are made....

(Gorby Lease, 3/7/11, at 1). The Gorby Lease further explained that it "shall be construed against termination, forfeiture, cancellation or expiration and in favor of giving effect to the continuation of this Lease where the circumstances exist to maintain this Lease in effect under any of the alternative mechanisms set forth above." (*Id.*)

The Gorby Lease stated that "the Lessee shall be deemed to be conducting operations in search of oil or gas, or their constituents, if the Lessee is engaged in geophysical and other exploratory work including, but not limited to, activities to drill an initial well, to drill a new well…." (*Id.*) The Gorby Lease does not exclusively define "activities to drill an initial well," but notes that "such activities shall include, but not be limited to, performing any preliminary or preparatory work necessary for drilling, conducting internal technical analysis to initiate and/or further develop a well, [and] obtaining permits and approvals associated therein." (*Id.*) The Gorby Lease provided that there may be

reasonable gaps in activities provided that there is a continuum of activities showing a good faith effort to develop a well or that the cessation or interruption of activities was beyond the control of Lessee, including interruptions caused by the acts of third parties over whom

> Lessee has no control or regulatory delays associated with any approval process required for conducting such activities.

(*Id.*)

The Gorby Lease continued to state that

> [i]f there is any dispute concerning the extension of this Lease beyond the primary term by reason of any of the alternative mechanisms specified herein, the payment to the Lessor of the prescribed payments provided below shall be conclusive evidence that the Lease has been extended beyond the primary term.

(*Id.*)

In December 2014, during the primary term of the Gorby Lease, Appellee conducted a survey for wells on the Leasehold and nearby properties (Piston Honda 1H, 3H, 5H, and 7H), and obtained permits for those wells in August 2015. However, they were ultimately not drilled. In October 2015, Appellee began work to construct the Piston Honda well pad. Although the well pad was not located on the Leasehold, Appellee's design planned for pooling the Leasehold with other lands to form drilling units. Appellee designed for the Piston Honda well pad to operate these individual drilling units and extract oil and gas for pooling. Thereafter, on December 10, 2015, Appellee obtained permits for the Piston Honda well pad, and in February 2016, it began construction on the well pad.

On August 4, 2016, the initial well permits for the Piston Honda 1H, 3H, 5H, and 7H wells expired. Appellee subsequently applied for permits for the Piston Honda 2H and 8H wells. Appellee obtained the permits in August 2017

and spudded[2] the Piston Honda 2H and 8H wells. Initially, the horizontal drilling was not planned to enter the Leasehold. However, on March 30, 2018, Appellee received amended permits permitting it to drill horizontally into the Leasehold. After obtaining further regulatory approval, Appellee drilled the horizontal portions of the 2H and 8H wells in December 2018 and January 2019. After fracking the area in June 2019, the Piston Honda 2H and 8H wells began producing gas in September and October 2019, and Appellee began to make the prescribed royalty payments for the gas produced from the wells.

Meanwhile, on October 29, 2018, Lightning Creek Holding, LP ("Lightning Creek"), successor in interest to Billie L. Gorby, executed an oil and gas lease conveying the same oil and gas rights to Appellant ("Lightning Creek Lease"). Appellant commenced this action by filing a complaint on December 31, 2019, and a second amended complaint on June 12, 2020. Appellant asserted a claim for declaratory judgment that the Gorby Lease was no longer in effect and that the Lightning Creek Lease was the operative lease, and a claim for unjust enrichment based on Appellee allegedly receiving and retaining the benefit of the property's oil and gas resources. In the complaint, Appellant argued that the Gorby Lease expired on March 6, 2016, Appellee did not take any actions that would constitute an extension of the Gorby Lease, and any actions taken were "inadequate, insufficient, and done in bad faith

---

[2] Spudding is the initial drilling of the well.

- 4 -

thereby not warranting an extension of the primary [term]" of the Gorby Lease. (Second Amended Complaint at ¶ 18).

Appellee filed a motion for summary judgment on February 24, 2023. In its motion, Appellee argued that the Gorby Lease had automatically extended beyond the primary term based on numerous activities that it conducted on the Leasehold or lands pooled therewith in search of oil and gas. These included (1) submitting a permit application for a Piston Honda well pad on March 5, 2015, (2) beginning field work in October 2015 necessary to begin construction on the well pad, including staking out access for trucks and other equipment to travel to the well site, and clearing trees to construct a road; (3) the permit for the Piston Honda well pad was approved in December 2015, and in February 2016, Appellee argued that it began construction to begin actively drilling the Piston Honda well pad by using the property with other lands to form drilling units from which oil and gas could be extracted.

Appellant opposed the motion, and the court heard oral argument on June 21, 2023. By order entered July 6, 2023, the court granted summary judgment in favor of Appellee.[3] Appellant timely filed a notice of appeal on August 2, 2023. Pursuant to the court's order, Appellant filed its concise statement of errors complained of on appeal on August 23, 2023.

_____

[3] The court also dismissed as moot Appellee's motion to strike the expert report of Appellant's expert, Randall M. Albert, who had opined that the gaps in activity at the Leasehold were not reasonable or in good faith, or at a minimum the issue must be presented to a jury.

Appellant raises the following issues on appeal:

1. Did disputed issues of material fact exist that should have prevented the trial court from granting [Appellee's] motion for summary judgment when the trial court found that there were no reasonable gaps in [Appellee's] activities to support continuing the March 7, 2011 oil and gas lease between Billie L. Gorby and Dale Property Services Penn, L.P. into its secondary term?

2. Did disputed issues of material fact exist that should have prevented the trial court from granting [Appellee's] motion for summary judgment regarding whether [Appellee] engaged in a continuum of activities showing a good faith effort to develop a well and hold the March 7, 2011 oil and gas lease between Billie L. Gorby and Dale Property Services Penn, L.P. into its secondary term?

3. Did the trial court commit reversable error when it failed to consider the affidavit of Randall M. Albert, [Appellant's] expert, when Mr. Albert's affidavit established disputed issues of material fact that only a jury can decide?

4. Did the payment of a royalty by [Appellee] to Lightning Creek … support granting the motion for summary judgment?

(Appellant's Brief at 5-6).

For purposes of disposition, we address Appellant's first, second and fourth issues together. Appellant argues that the trial court erred when it found that Appellee demonstrated that its activities met the criteria to extend the Gorby Lease beyond its primary term. Appellant insists that Appellee failed to conduct a continuum of activities showing a good faith effort to develop a well under the terms of the lease. Appellant claims that there were gaps in Appellee's activities and that the court committed reversible error in concluding that such gaps were reasonable. Appellant contends that only a

- 6 -

jury can determine whether the gaps in Appellee's activities were reasonable, and only a jury can determine whether Appellee engaged in a continuum of activities showing a good faith effort to develop a well. Appellant insists that because the Gorby Lease did not define "reasonable gaps," "a continuum of activities," or "good faith," it was reversible error for the court to decide what was or was not a reasonable gap because the question of reasonableness in this case is one for a jury. (*Id.* at 18-19).

Specifically, Appellant insists that the first gap in operation commenced on August 4, 2016, when Appellee's Piston Honda 1H, 3H, 5H, and 7H permits expired. Appellant argues the next activity was on August 28, 2017, when Appellee obtained well permits to drill the Piston Honda 2H and 8H wells. However, Appellant claims that activity on the Piston Honda 2H and 8H wells should not count as a "good faith" effort to search for oil and gas until March 30, 2018, when Appellee obtained the amended permits for the Piston Honda 2H and 8H wells changing the direction of the wells to lead to the Leasehold. Thus, Appellant submits that there was a 19-month gap in activity toward drilling on the property after the Piston Honda 1H, 3H, 5H, and 7H permits expired before the Piston Honda 2H and 8H amended permits were issued. Appellant avers that the trial court's decision to rule that these gaps in activities were reasonable is reversible error, and this Court must remand for a jury to decide the question of reasonableness, and whether Appellee's actions established a continuum of activities or good faith efforts to drill the

well.

Appellant further argues that Appellee's payment of royalties to Lightning Creek did not extend the Gorby Lease beyond its primary term because only activities specifically directed toward completion of a well on the Leasehold could have extended the lease. Appellant insists that Appellee did not conduct such activities, and therefore, the Gorby Lease did not continue and was terminated. Appellant maintains that Appellee's attempt to revive the terminated lease by paying royalties is contrary to what the parties reasonably intended under the lease. Based on the foregoing, Appellant concludes the court erred by granting Appellee's motion for summary judgment, and this Court must grant appropriate relief. We disagree.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct.

2618, 153 L.Ed.2d 802 (2002). Furthermore, "[o]ur consideration is not limited to the pleadings but includes, as well, depositions, interrogatories, responses to requests for admissions, and affidavits filed by the parties." *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101 (Pa.Super. 2001), *appeal denied*, 569 Pa. 714, 806 A.2d 857 (2002) (citing *White v. Owens-Corning Fiberglas, Corp.*, 668 A.2d 136, 142 (Pa.Super. 1995), *appeal denied*, 546 Pa. 648, 683 A.2d 885 (1996)).

In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to

make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"[An oil and gas] lease is in the nature of a contract and is controlled by principles of contract law." ***T.W. Phillips Gas & Oil Co. v. Jedlicka***, 615 Pa. 199, 208, 42 A.3d 261, 267 (2012).[4] In interpreting a contract, "[t]he intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." ***Thomas Rigging & Const. Co. v. Contraves, Inc.***, 798 A.2d 753, 755 (Pa.Super. 2002) (citation omitted). "[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not

---

[4] Our Supreme Court further explained the unique characteristics of an oil and gas lease, explaining that "the traditional oil and gas 'lease' is far from the simplest of property concepts." ***Id.*** at 209, 42 A.3d at 267 (citation omitted).

> Within the oil and gas industry, oil and gas leases generally contain several key provisions, including the granting clause, which initially conveys to the lessee the right to drill for and produce oil or gas from the property; the habendum clause, which is used to fix the ultimate duration of the lease; the royalty clause; and the terms of surrender.

***Id.***

modify the plain meaning under the guise of interpretation." ***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 665 (Pa.Super. 2014) (citation omitted).

"[T]he object in interpreting instruments relating to oil and gas interests, like any written instrument, is to ascertain and effectuate the intention of the parties." ***Szymanowski v. Brace***, 987 A.2d 717, 720 (Pa.Super. 2009) (citation and quotation omitted).

With respect to the question of reasonableness of actions, this Court has explained:

> Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. **What is reasonable is sometimes a question of law, and at other times, a question of fact.** No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable.

***Reid v. Brodsky***, 397 Pa. 463, 470, 156 A.2d 334, 338 (1959) (emphasis added). "While the question of reasonableness is normally left for the jury, that issue may be taken from a jury when the court concludes that fair and reasonable persons could not differ in their conclusions based on the available facts." ***Wallace v. Horvath***, 423 A.2d 1047, 1048 (Pa.Super. 1980) (citations omitted).

Instantly, Appellee asserted in its summary judgment motion that the Gorby Lease had been extended beyond the primary term because Appellee's

activities satisfied the clause that extended the lease beyond the primary term when "operations are conducted on the Leasehold or lands pooled/unitized therein in search of oil, gas, or their constituents." (Gorby Lease at 1). Appellee insisted that it satisfied the initial extension of the lease, and that any activities that occurred in the second term, or periods of non-activity, were unquestionably reasonable as a matter of law. Finally, Appellee argued that its royalty payments to Lightning Creek were, under the express terms of the lease, conclusive evidence of an extension.

In its order granting summary judgment in favor of Appellee, the trial court explained:

> At oral argument, counsel for [Appellee] provided a timeline of activities taken, from 2015 during the primary term of the Gorby Lease, through initiation of production and the making of royalty payments in 2019. [Appellee] sets forth what appears to be the longest and most meaningful gap in activities, being eight and a half months between the issuance of the modifications for the Piston Honda 2H and 8H Wells and the mobilization of a rig to drill the Piston Honda 8H Well, but then provides numerous convincing case law that such provides such a gap is unquestionably reasonable.

(Trial Court Opinion, 7/6/23, at 5-6). The court noted that

> the Gorby Lease may be continued so long as "operations are conducted," and defines "conducting operations" which allows for "reasonable gaps in activities provided that there is a continuum of activities showing a good faith effort to develop a well." *See* Gorby Lease at 1.

(*Id.* at 6). The court then concluded that "[i]n the matter at hand, Appellee has set forth a continuum of activities, commencing during the primary term

- 12 -

of the Gorby Lease, which resulted in a producing oil and gas well, experiencing only reasonable delays, when read against the Gorby Lease." (*Id.*) The court went on to state:

> Further, [Appellee] has set forth that Lightning Creek has received, and continues to receive, production royalties from [Appellee] under the Gorby Lease. [*See*] Motion for Judgment at 6. As the Gorby Lease remains held beyond its primary term "if prescribed payments are made," there is little question as to the fact that the Gorby Lease remains in force and effect within its secondary term.

(*Id.*)

Our review of the record confirms the trial court's findings. As the court noted, the Gorby Lease is lessee-friendly, in that it provides myriad ways in which Appellee was able to extend the lease beyond the primary term. Specifically, the Gorby Lease states that the lease "shall continue beyond the primary term as to the entirety of the Leasehold if…operations are conducted on the Leasehold or lands pooled/unitized therein in search of oil, gas, or their constituents." (Gorby Lease at 1). The record before the court at the time of the motion for summary judgment reveals that in December 2014, Appellee conducted a survey for Piston Honda wells 1H, 3H, 5H, and 7H, which were planned on the leasehold and/or lands pooled therewith, but ultimately not drilled. In October 2015, still during the primary term of the Gorby Lease, Appellee began work to construct the Piston Honda well pad. Appellee designed a plan pooling the leasehold with other lands to form drilling units from which oil and gas may be extracted via wells drilled from the Piston

Honda well pad. Thereafter, on December 10, 2015, Appellee obtained permits for the well pad, and in February 2016, it began construction. All of these activities took place during the primary term, which ended on March 6, 2016. The Gorby Lease does not require that a well be drilled in order to extend the lease beyond the primary term. In addition, we agree with the trial court that under the express language of the lease, "the payment to the Lessor of the prescribed payments provided below shall be conclusive evidence that the Lease has been extended beyond the primary term." (Gorby Lease at 2). Here, Appellee provided proof of its royalty payments to Lightning Creek, which provided conclusive evidence that the lease was extended beyond the primary term. (*See id.*)

Further, we disagree with Appellant to the extent it claims that the lease was ambiguous because it did not specifically define "reasonable gaps," "continuum of activities," or "good faith." Indeed, a close reading of the Gorby Lease as written reveals no ambiguity. The contractual language in the lease is clear that activities to drill a well shall "include, but not be limited to, performing any preliminary or preparatory work necessary for drilling, conducting internal technical analysis to initiate and/or further develop a well, [and] obtaining permits and approvals associated therein." (*Id.* at 1). Not only does the lease provide a non-exhaustive list of possible activities related to drilling a well, it then expands the leeway provided to the Lessee by stating that there may be "reasonable gaps in activities provided that there is a

continuum of activities showing a good faith effort to develop a well." (*Id.*) The Gorby Lease clearly conveys the intent of the parties to include a wide-ranging list of activities that qualify to extend the lease beyond the primary term. We will not modify the plain meaning of the contract language. *See Stephan, supra*.

Although we acknowledge that in most cases a question of whether actions were reasonable could be a question for the jury, given the specific facts of this case and language of the Gorby Lease, we agree with the trial court that fair and reasonable persons would not differ in their conclusion that any gaps in Appellee's actions here were reasonable. *See Wallace, supra*. The record reveals that under the expansive criteria set forth in the Gorby Lease, Appellee's actions during the primary lease term met the requirements to show operations in search of oil, gas, and their constituents, and were sufficient to renew the lease. Any gaps in operations unquestionably fell within the broadly defined permissible "reasonable gaps" allowed for in the Gorby Lease. Therefore, Appellant's first, second, and fourth issues merit no relief.

In its third issue, Appellant argues that the trial court committed reversible error when it failed to consider the affidavit of its expert, Randall M. Albert. Appellant insists that Mr. Albert's affidavit clearly established that there were disputed issues of material fact that could only be decided by a jury. Appellant insists that the trial court erroneously failed to consider the affidavit. Appellant references the trial court's opinion, which did not cite to

or mention Mr. Albert's expert affidavit in granting summary judgment in favor of Appellee. For these reasons, Appellant concludes this Court should vacate the trial court's order granting summary judgment. We disagree.

It is well established that, prior to ruling on a summary judgment motion, the trial court must examine the entire record, including pleadings, depositions, admissions to the record, and affidavits filed by the parties. **White, supra** at 142. In addition, as noted, in considering the propriety of a trial court's grant of summary judgment, this Court must review the entire record in the light most favorable to the non-moving party. **Basile, supra** at 101.

Here, in its opinion, the trial court acknowledged that "[Appellant] relies upon the expert report of Randall M. Albert." (Trial Court Opinion at 7). Appellant offers no evidence to establish that the court failed to consider Mr. Albert's affidavit in ruling upon the motion for summary judgment. To the contrary, the record suggests that the court considered Mr. Randall's affidavit, which had opined that the gaps in activity at the Leasehold were not reasonable or in good faith, or at a minimum the issue must be presented to a jury, but rejected the expert's opinion based on the court's conclusion that "fair and reasonable persons could not differ in their conclusions based on the available facts." **See Wallace, supra**. Therefore, Appellant's third issue merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/25/2025