J-A29024-20

2021 PA Super 114

| | | |
|---|---|---|
| CIRCLE K, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANSEL D. WEBSTER, JR. AND AMY | : | No. 809 MDA 2020 |
| ENSMINGER, TRUSTEE OF THE | : | |
| WEBSTER IRREVOCABLE GRANTOR | : | |
| TRUST | : | |

Appeal from the Judgment Entered May 14, 2020,
in the Court of Common Pleas of Tioga County,
Civil Division at No(s): 1088 CV 2018.

BEFORE:    DUBOW, J., KUNSELMAN, J., and COLINS, J.*

OPINION BY KUNSELMAN, J.:          **FILED: JUNE 3, 2021**

Circle K, Inc. appeals from the trial court's entry of summary judgment in favor of Ansel D. Webster, Jr., and Amy Ensminger, Trustee of the Webster Irrevocable Grantor Trust.  Upon review, we affirm.

The facts of this matter are straightforward.  Ansel D. Webster, Jr. and Ione D. Webster, husband and wife, ("Webster") owned property in Tioga County.  In 1999, Circle K purchased several parcels of that property from Webster, excluding the 11.25 acres on which Webster lived.  Additionally, Webster granted Circle K a Right of First Refusal ("ROFR") to purchase those 11.25 acres at some point in the future.  In relevant part, the ROFR provided:

_____

* Retired Senior Judge assigned to the Superior Court.

If the Parties of the First Part [Webster], their heirs, executors administrators or assigns, ***receive a bona fide offer*** for the sale, transfer or other conveyance of all or any part of the premises consisting of 11.25 acres . . . . The Parties of the First Part shall first notify the Parties of the Second Part [Circle K] in writing of the terms of such offer, including a full description of the property to be purchased, the purchase price and all other terms and conditions (the "Third Party Offer"), and the Party of the Second Part shall have the right to purchase such premises which is subject of such offer upon terms of the Third Party Offer . . . .

(emphasis added).

A little more than 10 years later, in 2010, Webster created a Trust (the Webster Irrevocable Grantor Trust) for estate planning purposes. Webster transferred the 11.25 acres of the property to the Trust for $1.00 as an *inter vivos* gift. Webster did not give Circle K notice of this transfer.

At some point, Circle K learned of the transfer, and demanded that Webster sell the property to it for $1.00. Webster refused. Thereafter, in 2018, Circle K filed the instant lawsuit alleging that Webster's transfer of the property to the Trust triggered the ROFR, and Webster failed to comply with its terms. Circle K asked the trial court to set aside the transfer to the Trust and order Webster to sell the property to Circle K for $1.00.

The parties filed cross-motions for summary judgment. Circle K claimed that it was entitled to summary judgment because, based upon the language of the ROFR, Webster's transfer of the property to the Trust triggered the ROFR. Conversely, Webster and the Trust claimed that they were entitled to summary judgment because, based upon the same language, the transfer of the property to the Trust as a gift did not trigger the ROFR. All parties agreed

- 2 -

that there were no genuine issues of material fact, and therefore, the matter was ripe for summary judgment.

The trial court granted summary judgment in favor of Webster and the Trust and denied Circle K's cross-motion. The court concluded that, based upon the plain language of the ROFR and the parties' intent evidenced thereby, Webster's transfer of the property to the Trust did not trigger the ROFR. Trial Court Opinion, 7/9/20, at 2. Circle K filed this timely appeal. Circle K and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Circle K raises the following three issues:

1. Whether the trial court erred in concluding the intent of the parties in the absence of evidence on this question of fact.

2. Whether it is a legal impossibility that the ROFR is triggered by Webster's transfer of the premises to his Trust.

3. Whether Webster's transfer of the premises to his Trust would result in an absurd conclusion if the ROFR was triggered.

Circle K's Brief, at 4.

Circle K argues that the trial court erred in concluding that the ROFR was not triggered under the circumstances of this case and that summary judgment in favor of Webster and the Trust was not proper. Specifically, Circle K argues on appeal that the phrase "transfer and conveyance" coupled with "*bona fide* offer" in the ROFR is insensible and renders the ROFR ambiguous. It claims that the court's conclusion that it would be "a legal impossibility to receive a *bona fide* offer for a transfer or other conveyance by gift" reflects this. Therefore, in retrospect, Circle K now claims an issue of material fact

existed regarding the parties' intent, and summary judgment was improper. Circle K's Brief at 12-13. Additionally, Circle K argues that the trial court erred in concluding that if the ROFR was triggered, Circle K would have had to create an identical trust, resulting in an absurd conclusion. *Id.* at 13-14.

When reviewing a trial court's order granting summary judgment, our role is as follows:

> [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

We interpret an ROFR in accordance with the principles of contract construction. *CBS, Inc. v. Capital Cities Communications, Inc.*, 448 A.2d 48, 54 (Pa. Super. 1982). In doing so,

> [w]e must first look to the writing itself, for if the terms of the agreement are clear and precise, performance must be required in accordance with the intent as expressed in the agreement without resort to rules of construction or extrinsic evidence.
>
> ***
>
> Where, however, the terms of the agreement are ambiguous and the intent of the parties cannot be ascertained by reference to the writing, the agreement will be construed strictly against the party who prepared the agreement, particularly in the event such party is in a superior bargaining position to the other contracting party.[16] In addition, extrinsic evidence may be introduced to show the

- 4 -

common understanding and intent of the parties at the time the contract was entered into.

***Id.*** (citations and quotations omitted).

Before applying these principles to the merits of the instant case, we observe that Circle K did not raise its first appellate issue in its 1925(b) concise statement. Notably, Circle K did not claim below that summary judgment was improper because issues of material fact existed. In fact, Circle K filed its own motion for summary judgment and asserted that there were no disputed factual issues, and then reasserted this in its concise statement. Now, on appeal, Circle K claims the trial court should have taken evidence to determine the parties' intent.

Claims not raised in the trial court may not be raised for the first time on appeal. ***Jahanshahi v. Centura Development Co., Inc.***, 816 A.2d 1179, 1189 (Pa. Super. 2003). Additionally, where an appellant fails to raise an issue in the concise statement and comply with Pa.R.A.P. 1925, it will result in waiver. Pa.R.A.P. 1925(b)(4)(vii). Because Circle K failed to comply with these rules, we are compelled to find that it waived its first issue.[1]

---

[1] We also observe that Circle K did not raise its second or third appellate issues in its concise statement, but instead, only generally claimed there, that the trial court erred when it determined that the ROFR was not triggered by the transfer of the property from Webster to the Trust. These two claims are consistent with Circle K's argument on summary judgment. Moreover, the trial court did not issue an opinion or give its reasons for granting Webster's and the Trust's motion for summary judgment and denying Circle K's. Under these circumstances, i.e., where an appellant cannot readily discern the basis for the trial court's decision, our rules provide that the generality of a concise
*(Footnote Continued Next Page)*

Even if Circle K had preserved this issue, we would agree with the trial court, that based upon the plain language of the ROFR, the parties' intent was evident, and therefore, not ambiguous.

"[T]the right of first refusal is not activated in every transfer of property from one entity to another." ***Lehn's Court Management LLC v. My Mouna Inc.***, 837 A.2d 504, 507 (Pa. Super. 2003). As with other contracts, we must review the language of the ROFR to ascertain the parties' intent and determine when they intended the ROFR to apply. Considering the particular words used and their plain meaning, we agree with the trial court that the parties' intent is evident from the ROFR's language itself and is not ambiguous, contrary to Circle K's contention. Furthermore, we agree, based upon the language of the ROFR, that it was not triggered under the particular circumstances of this case. The trial court did not commit an error of law or abuse its discretion in entering summary judgment in favor of Webster and the Trust.

Here, the ROFR was triggered if Webster "***receive[d] a bona fide offer*** for the sale, transfer or other conveyance of all or any part of the [property] consisting of 11.25 acres . . . ." Although this language includes a transfer or other conveyance, the key terms are "receive," "offer," and "*bona fide*." Generally, we give the terms in a contract their ordinary meaning. ***See PFB Members' Serv. Corp. v. Eckenroad***, 236 A.3d 1120, (Pa. Super. 2020).

---

statement shall not result in waiver. Pa.R.A.P. 1925(b)(4)(vi). Although the issues are not waived, they do not entitle Circle K to relief.

.

First, the ROFR language required that Webster **receive** an offer. "Receive" contemplates getting something from someone or somewhere other than the recipient. Notably, this manner is consistent with the ROFR's reference to a "Third Party Offer." It is undisputed that Webster never received an offer. Instead, he gifted the property to the Trust. Undeniably, the giving of a gift involves the very opposite of receiving.

Additionally, the ROFR language required that there be an **offer**. To "offer" means "to present for acceptance or rejection" or "to propose or put forward for consideration."[2] An "offer" is "an act or instance of offering." **Id.** Webster's gift of the property, although a transfer or conveyance," was not equivalent to an "offer for the sale, "transfer or conveyance of the property." By contrast, a "gift" is "something given voluntarily without payment in return, as to show favor toward someone" or "something bestowed or acquired without any particular effort by the recipient or without its being earned."[3] Circle K's reading of the ROFR ignored this important language and focused only on the "transfer or conveyance" phrase without considering all of the words.

Furthermore, even if we construed the transfer to be an offer under the ROFR, the offer had to be **bona fide**. In the context of this ROFR, the language contemplates that the property would be sold, transferred or

---

[2] "Offer" https://www.dictionary.com/browse/offer# (last visited 03/18/21).

[3] "Gift" https://www.dictionary.com/browse/gift# (last visited 03/18/21).

conveyed for fair market value. Webster's transfer of the property to the Trust for $1.00 as an *inter vivos* gift does not come within that meaning.

Additional language in the ROFR supports the trial court's conclusion. The court appropriately looked at the entire ROFR to determine whether the parties intended Circle K's right to be triggered under these circumstances. Beyond the above quoted language, the ROFR included terms such as "the property to be purchased," "the purchase price," and "the Party of the Second Part [Circle K] shall have the right to purchase such premises . . . upon terms of the Third Party Offer." As the trial court noted, "[t]hese terms and the entirety of the ROFR agreement [are] indicative of an intent to provide [Circle K] a preferential purchase right triggered upon a prospective purchase from a third party." Trial Court Opinion, 7/9/20, at 5. Although the ROFR references a conveyance and transfer, nothing within the ROFR indicates that the parties intended a gift of the property within the Webster family to trigger the ROFR. *See id.*

Based upon this analysis, we agree with the trial court that the ROFR was not triggered. Therefore, we need not assess Circle K's second and third issues regarding whether the trial court erred in concluding that Circle K's interpretation would result in a legal impossibility or an absurd result.

Finally, we observe that, despite the transfer of the property to the Trust, Circle K still retains a right of first refusal to purchase the 11.25 acres under the ROFR. The ROFR provides that it is binding upon Webster's heirs, executors, administrators, and assigns. Consequently, if the Trust **receives**

a **bona fide offer** for the property in the future, Circle K retains its right to notice thereof and its preferential purchase right for the property under the ROFR upon the same terms as the third party offer.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/03/2021