J-A19013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| STEPHEN BEECH AND KATRINA BEECH, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| ASHWINI D. SHARAN, M.D. AND JEFFERSON UNIVERSITY HOSPITAL, AND NEVRO CORPORATION | : | No. 3064 EDA 2022 |

Appeal from the Order Entered November 9, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at No(s):  191100980

BEFORE:   BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 3, 2023**

Stephen Beech and Katrina Beech, husband and wife ("Plaintiffs"), appeal from the order granting the motion for summary judgment filed by Aswini D. Sharan, M.D., Jefferson University Hospital, and Nevro Corporation ("Defendants").[1]  We affirm.

In 2019, Plaintiffs initiated the underlying negligence and loss of consortium action against Defendants, based upon allegations that Dr. Sharan "surgically implanted a Nevro Spinal Cord Stimulator ('medical device') onto

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The order was filed on November 7, 2022, but service upon the parties was not docketed in accordance with Pa.R.C.P, 236(b) until November 9, 2022. Hence, for purposes of this appeal, the order was entered on November 9, 2022.  **See** Pa.R.A.P. 108(b).

[Mr. Beech's] person in a negligent manner resulting in injury[.]" Trial Court Opinion, 3/6/23, at 1. Specifically, on November 7, 2017, Dr. Sharan surgically implanted the medical device. Following the procedure, the device and its component parts were tested and appeared to be implanted correctly. Thereafter, but prior to being released from the hospital, Mr. Beech sneezed[2] and felt a pop in his neck. It was subsequently determined through imaging that the device had migrated, requiring a second surgery, performed three days later, to reposition the device. *See id*. at 2.

Plaintiffs filed the instant cause of action based upon the theory that "the migration of the device could only be a result of a deviation from the 'standard of care and skill required of, and ordinarily exercised by the average qualified medical professionals at a professional level.'" *Id*. (citing Amended Complaint, ¶ 17) (cleaned up). Critically, Plaintiffs certified that expert medical testimony was not necessary to litigate their claim against Defendants. *See* Complaint, 12/20/19, at unnumbered 8 (certifying that "[e]xpert testimony of an appropriate licensed professional is not necessary for prosecution of the claim against Defendants"); Amended Complaint, 1/17/20, at unnumbered 8 (same). Thus, Plaintiffs neither presented nor secured an expert by the conclusion of discovery.

Defendants filed a motion for summary judgment based upon Plaintiffs' failure to secure a medical expert. Plaintiffs responded, arguing that "the

---

[2] While not dispositive, we note that Plaintiffs allege in their brief that Mr. Beech vomited, causing the device to move. *See* Plaintiffs' brief at 20.

malpractice alleged is so clearly within the common knowledge of the average layman" that Plaintiffs were "not required to produce an expert report to demonstrate the elements of medical malpractice." Response of Plaintiffs to Motion for Summary Judgment, 10/19/22, at unnumbered 2. The court granted Defendants' motion and this appeal followed.[3] Both Plaintiffs and the trial court have complied with Pa.R.A.P. 1925.[4]

On appeal, Plaintiffs frame their issue in this manner: "This appeal concerns the role of the trial court judge in granting summary judgment despite the existence of genuine[,] material[,] factually disputed issues in existence." Plaintiffs' brief at 5 (cleaned up). Our standard of review for orders granting summary judgment is well-settled:

> An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the

---

[3] We note that Plaintiffs properly filed a motion for reconsideration and notice of appeal within the requisite period, and the trial court denied Plaintiffs' motion after the instant appeal commenced. *See* Pa.R.A.P. 1701 *Note* (stating that "because the clock is running on the appeal period and the period for reconsideration simultaneously, filing the notice of appeal at the same time as or shortly after the motion for reconsideration will protect against waiver of the appeal if the trial court or other government unit fails to act").

[4] The trial court posits that Plaintiffs waived all issues as a result of their six-page narrative-form statement that did not conform to the dictates of Rule 1925(b). *See* Trial Court Opinion, 3/6/23, at 3-4; *see also Commonwealth v. Arnold*, 284 A.3d 1262, 1279 (Pa.Super. 2022) ("A Rule 1925(b) concise statement that is too vague can result in waiver of issues on appeal."). However, since the trial court was ultimately able to discern Plaintiffs' complaint and address it, we decline to find waiver. *See Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa.Super. 2018) (addressing claim, despite the potential waiver for a non-compliant Rule 1925(b) statement, because the trial court could "readily apprehend" the issue).

issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Circle K, Inc. v. Webster Tr. of Webster Irrevocable Grantor Tr.*, 256 A.3d 461, 464 (Pa.Super. 2021) (cleaned up).

The trial court granted Defendants' motion for summary judgment based upon Pa.R.C.P. 1035.2(2), which provides as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> . . . .
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. In *Miller v. Sacred Heart Hosp.*, 753 A.2d 829 (Pa.Super. 2000), this Court explained that "[t]he purpose of Rule 1035.2 is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant discovery has been completed[ and thus,] summary judgment is appropriate where a party fails to produce evidence of facts essential to his cause of action." *Id*. at 833 (cleaned up). Regarding cases alleging medical malpractice, we have highlighted the importance of Rule 1035.2 thusly:

> Our courts have held that because the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson, a medical malpractice

- 4 -

plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action. Thus if, at the conclusion of discovery, the plaintiff fails to produce expert medical opinion addressing the elements of his cause of action within a reasonable degree of medical certainty, he has failed to establish a *prima facie* case and may not proceed to trial. At this juncture, a moving party is entitled to summary judgment under Rule 1035.2. In the absence of competent evidence of medical opinion, the plaintiff may avoid summary judgment only if the matter is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non[-]professional persons.

***Id***. (cleaned up).

We note that Plaintiffs' primary allegations sound in negligence. Thus, they were required to prove: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." ***Grossman v. Barke***, 868 A.2d 561, 566 (Pa.Super. 2005) (cleaned up). Since the action was based upon medical malpractice particularly, Plaintiffs' claim was also subject to the following legal framework:

Medical malpractice is further defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services. The underlying elements of negligence in a medical malpractice claim, mirroring those of a basic negligence claim, are more specifically described as a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.

One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons. In other words, because the negligence of a physician encompasses matters not within the ordinary knowledge and

experience of laypersons, a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury.

The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care and that the breach proximately caused the plaintiff's injury. Hence, causation is also a matter generally requiring expert testimony.

Indeed, a jury of laypersons generally lacks the knowledge to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care. In such cases, the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion. Without experts we feel that the jury could have no basis other than conjecture, surmise or speculation upon which to consider causation.

However, even in a negligence suit characterized as medical malpractice, expert testimony is not always required if the alleged negligence is obvious or within the realm of a layperson's understanding.

*Id*. at 566–67 (cleaned up).

According to Plaintiffs, Dr. Sharan's alleged error in "failing to fully secure the permanent implant requires no expertise, no medical knowledge or education to understand since it is axiomatic that unsecured things move when they are not fully secured." Plaintiffs' brief at 7-8. They maintain that "[t]he facts of this matter are simple and do not require any expert assistance in order for the trier of facts (jury) to find liability exists[.]" *Id*. at 6. Therefore, they aver that the court erred "by refusing to find the circumstantial evidence establish[ed] a *prima facie* case for medical negligence based upon

the doctrine of *res ipsa loquitur* since Plaintiffs did not need expert testimony to establish *prima facie* elements[.]" ***Id***.

The trial court rejected this argument, noting that Plaintiffs incredibly "invite the court to find that neurosurgery, or the surgical implantation of a medical device including the number and type of sutures needed to hold said device in place, is a common knowledge such that lay persons are able to understand." Trial Court Opinion, 3/6/23, at 5. In concluding that summary judgment was proper pursuant to Rule 1035.2, the trial court found that

> [i]n addition to being outside the common knowledge of a lay person, Plaintiffs offered no evidence that the migration would not have ordinarily occurred in the absence of negligence. Plaintiffs offered no evidence that [Mr. Beech's] sneezing, coughing, or vomiting did not cause the medical device to migrate. There are too many details left in the realm of conjecture. An expert opinion is required in this matter.
>
> In failing to produce an expert opinion to substantiate the elements of their claim, Plaintiffs failed to establish a *prima facie* case of medical negligence.

***Id***. at 6.

Upon review of the certified record, we discern no error in the trial court's decision to grant Defendants' motion for summary judgment based upon Rule 1035.2(2). Plaintiffs purport to liken what they deem the "easily understandable concept . . . that a permanently implanted spinal cord stimulator migrated because it was not fully secured and needed to be removed and re-implanted higher, and in a more secure manner using the longer strain relief loop" with "a boat not fully tied to a dock" or "a person

forgetting to tie-down something on a roof rack on their car and then having it fall off the roof of the car." Plaintiffs' brief at 25; *see also id*. at 35 (analogizing Dr. Sharan's "simple human mistake" to "forgetting to fix a button, to tie a shoe, to shut a window, or to flick a switch"). However, our review of the record confirms the trial court's finding that "Plaintiffs' theory [i]s too simplistic and not an accurate reflection of the procedure in this case." Trial Court Opinion, 3/6/23, at 5.

Moreover, while Plaintiffs posit that it is "axiomatic that unsecured things move when they are not fully secured[,]" they nonetheless acknowledge that they did not understand the need for the second surgery until a nurse explained it. *See* Plaintiffs' brief at 7-8, 27. In other words, Plaintiffs did not conclude that Defendants were negligent until someone versed in medicine explained what happened. The same would hold true for a jury. Thus, the record bears out the trial court's conclusion that a medical expert was needed in this case and, without one, Plaintiffs could not establish a *prima facie* case of medical negligence.

Based on the foregoing, we affirm the order of the trial court granting Defendants' motion for summary judgment.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/03/2023</u>